Joshua W. Carden, SBN No. 021698
ROBINSON LAW OFFICES
202 E. Earll Dr., Suite 490
Phoenix, Arizona 85012-2698
T: (602) 888-8994
F: (602) 888-8531
joshua@robinsonlawoffices.com
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maureen Gaughan, Trustee,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Wayfair LLC,<br><br>　　　　　　　Defendant. | **ORIGINAL COMPLAINT** |

Plaintiff Maureen Gaughan, solely in her capacity as Chapter 7 Trustee for the bankruptcy estate of Victoria R. Bice, alleges as follows:

## I. NATURE OF THE ACTION

1.　　This is an employment action arising from Defendant Wayfair LLC's interference with rights protected by the Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654 ("FMLA"), and Arizona's paid sick time law, A.R.S. §§ 23-371 to 23-375, as part of the Arizona Fair Wages and Healthy Families Act.

2.　　The claims asserted here arise from Defendant's treatment of Victoria R. Bice after she was diagnosed with a serious illness, sought and used protected leave, requested additional medically necessary time off and schedule flexibility for surgery, treatment, and recovery, and was then assessed attendance points, denied protected leave and schedule protections, and terminated.

3.　　Plaintiff does not assert ADA claims in this action at this time. Those claims remain the subject of administrative proceedings pending at the EEOC. This action is thus limited to prepetition FMLA and Arizona paid sick time claims belonging to the bankruptcy estate.



## II. PARTIES

4.    Plaintiff Maureen Gaughan is the duly appointed Chapter 7 Trustee in *In re Norman Leroy Bice and Victoria R. Bice*, Chapter 7 Case No. 4:25-bk-02069-BMW, pending in the United States Bankruptcy Court for the District of Arizona.

5.    Victoria R. Bice was, at all relevant times, a Pinal County, Arizona resident who worked remotely for Defendant's Boston, Massachusetts headquarters from Arizona.

6.    Defendant Wayfair LLC is a Delaware limited liability company doing business in Arizona and in this District. At all relevant times, Defendant employed Ms. Bice in Arizona and exercised control over the terms and conditions of her employment.

## III. JURISDICTION AND VENUE

7.    This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Counts One and Two arise under the FMLA.

8.    This Court has supplemental jurisdiction over Count Three under 28 U.S.C. § 1367 because it forms part of the same case or controversy as the FMLA claims.

9.    This Court is authorized to grant relief under 29 U.S.C. § 2617.

10.    Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to these claims occurred in Arizona, Ms. Bice worked for Defendant from Arizona, and the relevant employment decisions were directed at and implemented against her in Arizona.

## IV. BANKRUPTCY ESTATE AND TRUSTEE AUTHORITY

11.    The claims asserted in this Complaint accrued before the filing of the Bice Chapter 7 bankruptcy case and therefore became property of the bankruptcy estate upon the filing of the bankruptcy petition.

12.    As Chapter 7 Trustee for the Bice bankruptcy case, Plaintiff is the representative of the bankruptcy estate and has capacity to sue and be sued on behalf of the estate.

13.    Plaintiff is the real party in interest as to the prepetition claims asserted in this action.

14.    On September 22, 2025 and March 24, 2026, the United States Bankruptcy Court



2

for the District of Arizona entered orders in Case No. 4:25-bk-02069-BMW approving the employment of Joshua Carden as special counsel for Plaintiff in connection with the claims herein.

15.    Plaintiff therefore brings this action in her capacity as Chapter 7 Trustee and estate representative with respect to the prepetition claims arising from Ms. Bice's employment with Defendant.

## V. FACTUAL ALLEGATIONS

16.    Defendant hired Ms. Bice in or about January 2019.

17.    By the end of her employment, Ms. Bice worked as a Service Senior Associate.

18.    She worked remotely from Arizona and handled customer-service calls, chats, and emails.

19.    Ms. Bice was a strong performer. She had substantial tenure with Defendant and had a positive performance history before the events described here.

20.    In late October 2022, Ms. Bice was diagnosed with a serious illness qualifying as a disability.

21.    She promptly informed Defendant of her diagnosis, need for treatment, and need for leave for medical appointments and treatment.

22.    On or about October 28, 2022, Defendant approved intermittent FMLA leave for Ms. Bice.

23.    Defendant later approved continuous leave beginning on or about November 23, 2022.

24.    At least a substantial portion of Ms. Bice's leave from late October 2022 into early 2023 was approved FMLA leave.

25.    During this period, Ms. Bice underwent difficult treatment and prepared for additional surgery and recovery.

26.    Before the end of her then-current leave, Ms. Bice informed Defendant that she would need additional time off because she remained in treatment and would need surgery and recovery before returning to full-duty work.

27.    On or about March 28, 2023, Ms. Bice submitted return-to-work paperwork from



her physician stating that she would not be able to return to work full-time until early September 2023.

28.    On or about March 31, 2023, Defendant acknowledged receipt of the paperwork and stated that it would engage in an interactive process to determine what accommodations could be offered.

29.    On or about April 10, 2023, Defendant confirmed that Ms. Bice's paperwork was under review.

30.    During this time, Defendant nonetheless took the position that any time away from work while it was reviewing Ms. Bice's request would be subject to its attendance policy.

31.    On or about April 14, 2023, Defendant informed Ms. Bice that it would not extend her leave and that she would be required to return to work.

32.    Ms. Bice protested to HR and her supervisor about the way her previous FMLA leave was being treated.

33.    On or about April 18, 2023, Defendant sent Ms. Bice a written recap stating that it would not approve her requested leave from approximately April 3, 2023 through early September 2023 and that any time away from work during that period would be subject to Defendant's attendance policy.

34.    The April 18 communication stated, among other things, that Defendant deemed continuous leave "unreasonable," claimed the team was short-staffed, and said leadership would contact Ms. Bice about next steps.

35.    After Defendant denied the requested leave, Ms. Bice asked whether she could return on a modified three- or four-day workweek, or work a Monday-through-Thursday schedule so that she could continue treatment.

36.    Ms. Bice also sought other schedule flexibility or duty modifications that would allow her to continue treatment while working.

37.    Defendant did not grant any of those requests.

38.    Instead, Defendant told Ms. Bice that she had only two options: return immediately to full-time work and keep benefits, or return immediately to full-time work and ask to be moved



to part-time status, which Defendant said could result in loss of health-insurance benefits.

39. Defendant further told Ms. Bice that if she did not return, Defendant would process either her resignation or her termination.

40. Defendant assessed attendance points and unexcused absences against Ms. Bice during the period in which it was reviewing, denying, and responding to her leave and schedule requests.

41. On or about April 24, 2023, Defendant terminated Ms. Bice's employment.

42. Upon information and belief, Defendant did this due to Ms. Bice's use of leave or paid sick time or her protected activity, or some combination of the three.

43. As a result of the termination, Ms. Bice lost wages, salary, benefits, and health-insurance coverage.

44. Defendant's actions also forced Ms. Bice to incur substantial out-of-pocket costs associated with replacement health coverage and medical care.

45. In later defending its conduct, Defendant expressly relied on Ms. Bice's time away from work as a negative factor.

46. Specifically, Defendant asserted that Ms. Bice had been unable to be in attendance in the role for a total of approximately 10 months and was therefore not qualified for the position.

47. That time period necessarily included leave Defendant had approved as FMLA leave.

48. Defendant also asserted that attendance was an essential function of the position and relied on its attendance-point system and purported attendance violations as part of its justification for the separation.

49. Defendant knew Ms. Bice had invoked statutory leave rights, knew she was using leave for her own serious health condition and medical treatment, and nonetheless counted protected leave and medically necessary absences against her.

50. Defendant acted intentionally, willfully, and/or with reckless disregard for Ms. Bice's statutory rights.

51. All conditions precedent to this suit have occurred or been satisfied.



## COUNT ONE - FMLA INTERFERENCE

### 29 U.S.C. § 2615(A)(1)

52.     Plaintiff realleges paragraphs 1 through 51.

53.     At all relevant times, Defendant was a covered employer within the meaning of the FMLA.

54.     At all relevant times, Ms. Bice was an eligible employee within the meaning of the FMLA. Among other things, she had been employed by Defendant for at least 12 months and had worked the required number of hours for FMLA eligibility before taking leave.

55.     At all relevant times, Ms. Bice's worksite for FMLA purposes, including the site to which she reported or from which her assignments were made, employed the requisite number of employees within the statutorily required geographic range.

56.     Ms. Bice had a serious health condition within the meaning of the FMLA.

57.     Ms. Bice gave Defendant adequate notice of her need for FMLA-protected leave.

58.     Defendant approved and designated at least part of Ms. Bice's leave as FMLA leave.

59.     The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, rights protected by the Act.

60.     Defendant interfered with Ms. Bice's FMLA rights.

61.     Among other things, Defendant used Ms. Bice's taking of FMLA leave as a negative factor in employment decisions.

62.     Defendant counted or relied upon protected leave, protected absences, and/or the fact of protected leave use when evaluating Ms. Bice's attendance, qualification for continued employment, and separation from employment.

63.     Defendant further interfered with Ms. Bice's FMLA rights by relying on time away that included approved FMLA leave to characterize her as unable to attend work for approximately 10 months and as unqualified for her position.

64.     To the extent Defendant assessed attendance points or otherwise penalized absences that were protected by the FMLA, Defendant unlawfully counted FMLA-protected leave under a no-fault or attendance-based disciplinary system.



65. Defendant's conduct discouraged, restrained, and interfered with the exercise of FMLA rights.

66. As a direct and proximate result of Defendant's FMLA interference, Plaintiff has suffered damages, including lost wages, salary, employment benefits, other compensation, interest, and other monetary losses.

67. Defendant's violations were willful, entitling Plaintiff to the three-year limitations period and to all available relief, including liquidated damages.

**COUNT TWO – FMLA RETALIATION**

**29 U.S.C. § 2615(A)(2) AND 29 C.F.R. § 825.220(E)**

68. Plaintiff realleges paragraphs 1 through 51.

69. Ms. Bice engaged in protected activity under the FMLA by complaining to Defendant, including to Human Resources and her supervisor, that Defendant was mishandling her FMLA leave, leave requests, and related attendance issues, and by opposing practices she reasonably believed violated the FMLA.

70. Defendant knew of Ms. Bice's protected activity.

71. After Ms. Bice engaged in protected activity, Defendant subjected her to materially adverse actions, including assessing attendance points and unexcused absences, threatening separation if she did not immediately return to work, and terminating her employment.

72. The temporal proximity between Ms. Bice's protected activity and Defendant's adverse actions, together with the surrounding circumstances, supports a causal connection between the two.

73. Defendant retaliated against Ms. Bice because she opposed practices made unlawful by the FMLA and/or practices she reasonably believed violated the FMLA.

74. Defendant's retaliatory conduct included, among other things, penalizing Ms. Bice after she complained about the handling of her protected leave and using attendance-related measures and separation threats to punish or deter her protected opposition.

75. Defendant's conduct violated 29 U.S.C. § 2615(a)(2) and 29 C.F.R. § 825.220(e).

76. As a direct and proximate result of Defendant's retaliation, Plaintiff has suffered



damages, including lost wages, salary, employment benefits, other compensation, interest, and other monetary losses.

77. Defendant's violations were willful, entitling Plaintiff to the three-year limitations period and to all available relief, including liquidated damages.

## COUNT THREE - VIOLATION OF ARIZONA PAID SICK TIME LAW
## A.R.S. §§ 23-371 TO 23-375 AND 23-364

78. Plaintiff realleges paragraphs 1 through 51.

79. At all relevant times, Defendant employed Ms. Bice in Arizona and was subject to Arizona's earned paid sick time law.

80. By virtue of her employment in Arizona, Ms. Bice accrued earned paid sick time under Arizona law.

81. Arizona law permits an employee to use earned paid sick time for the employee's own mental or physical illness, injury, or health condition, and for medical diagnosis, care, treatment, and preventive medical care.

82. Ms. Bice sought and used time off for qualifying reasons under Arizona's earned paid sick time law, including medical diagnosis, surgery, recovery, and related medical appointments and treatment.

83. Defendant interfered with, restrained, and denied the exercise of rights protected by Arizona's earned paid sick time law.

84. Among other things, Defendant failed and refused to honor protected sick-time rights, counted qualifying medically necessary absences against Ms. Bice under its attendance policy, and threatened or imposed discipline and termination because of protected time off and protected requests for time off.

85. Defendant also retaliated against Ms. Bice for requesting, attempting to use, and/or using protected earned paid sick time.

86. Defendant's attendance-point assessments, threats of separation, and termination were adverse actions within the meaning of Arizona law.

87. Defendant's conduct presumptively violated A.R.S. § 23-374 and related provisions



of Arizona's earned paid sick time law.

88.    Defendant's violations were intentional and willful.

89.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages and is entitled to all legal and equitable relief available under Arizona law, including monetary damages, including "not less than $150 per day," statutory relief, prejudgment interest, attorney's fees, costs, and any other relief authorized by statute.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

A. For back pay, lost wages, lost salary, lost bonuses, lost employment benefits, and other compensation denied or lost by reason of Defendant's unlawful conduct;

B. For the value of lost health-insurance benefits and related losses caused by Defendant's unlawful conduct;

C. For liquidated damages and all other damages available under the FMLA;

D. For all damages, statutory relief, equitable relief, and other remedies available under Arizona's earned paid sick time law;

E. For prejudgment and post-judgment interest as allowed by law;

F. For reasonable attorney's fees, expert fees, taxable costs, and expenses as allowed by law;

G. For front pay or other equitable relief as appropriate; and

H. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted on this 25th day of March, 2026,

ROBINSON LAW OFFICES

By: s/Joshua W. Carden
Joshua W. Carden
*Attorneys for Plaintiff*

